

In The

## Court of Appeals
### Seventh District of Texas at Amarillo

_____

No. 07-13-00070-CV

_____

MARIA LUISA GOMEZ, APPELLANT

V.

HUGO ARELLANOS RANGEL, APPELLEE

On Appeal from the 46th District Court
Wilbarger County, Texas
Trial Court No. 25,397; Honorable Dan Mike Bird, Presiding

September 8, 2014

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Maria Luisa Gomez, brings this appeal complaining of the trial court's *Order in Suit to Modify Parent-Child Relationship.* By her original and reply brief, she asserts the trial court erred in (1) failing to terminate Appellee's, Hugo Arellanos Rangel's, parental rights to their son, T.H.A.G.,[1] (2) modifying Hugo's possession and

---

[1] To protect the child's privacy, we refer to him by his initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014). *See also* TEX. R. APP. P. 9.8(b).

access absent a material and substantial change and (3) modifying the prior order by imposing a geographical restriction in the absence of a pleading requesting such relief. We reform the trial court's order, and as reformed, affirm.

## BACKGROUND

In 2000, in Mexico, Hugo began a romantic relationship with Maria's older sister. A son was born to them in 2003. While that relationship was ongoing, unbeknownst to Maria's sister, Hugo and Maria became romantically involved and in 2008, they too had a son, T.H.A.G., the child the subject of this appeal. In late 2008 or early 2009, Maria, T.H.A.G., her sister and her sister's son, left Mexico for the United States to flee from what they alleged was Hugo's pattern of domestic violence. Hugo came to the United States to find his children. He denied being violent and testified that Maria and her sister conspired to take his children to the United States out of revenge for the love triangle. After moving to the United States, Maria's sister eventually married and has a family. Maria and T.H.A.G. live with them in Vernon.[2]

Hugo is an educated bookkeeper and owned a factory in Mexico. He liquidated his business to come to the United States and locate his sons. He settled in Wichita Falls and found work as a handyman. With assistance from the Federal Bureau of Investigation, he located his children in 2009.

In 2010, the trial court entered an *Order in Suit Affecting the Parent-Child Relationship* appointing Maria as sole managing conservator of T.H.A.G. Even though

---

[2] Hugo has three other children he visits, one in Mexico and two in Canada.

the order was rendered by default, Hugo was named possessory conservator, albeit without visitation rights.

In April 2011, Hugo filed a petition to modify the 2010 order alleging a material and substantial change in circumstances. He requested reasonable access and visitation with his son. Maria filed a counter-petition in August 2012 seeking termination of Hugo's parental rights on the grounds he had (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered his physical or emotional well-being; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered his physical or emotional well-being, and (3) failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), and (F) (West 2014).

At the same time, Maria's older sister also filed suit to terminate Hugo's parental rights to his older son, T.H.A.G.'s half-brother. The cases were consolidated and tried to the bench. The trial court terminated Hugo's parental rights to his older son but found it was not in T.H.A.G.'s best interest to terminate the parent-child relationship. Hugo was granted supervised visitation with T.H.A.G. and was ordered to pay monthly child support in the sum of $184 per month. The order also modified Maria's exclusive right to designate her son's primary residence by limiting it to Wilbarger County, Texas. The trial court filed *Findings of Fact and Conclusions of Law*. *Conclusion of Law* 16 provides "[i]t is not in the best interest of the child to terminate the parental rights of [Hugo] to [T.H.A.G.]." *Conclusion of Law* 19 provides "[i]t is in the best interest of the child that

3

[Hugo] have access to the child" and *Conclusion of Law* 20 names Hugo as a possessory conservator.

### ISSUE ONE—DENIAL OF TERMINATION OF PARENT-CHILD RELATIONSHIP

By her first issue, Maria complains the trial court erred in denying her petition to terminate Hugo's parental rights to T.H.A.G.. The natural right existing between parents and their children is of constitutional dimension. *See Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings are strictly construed in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012).

The Family Code permits a trial court to terminate parental rights if the party seeking termination proves by clear and convincing evidence that the parent committed an action prohibited under section 161.001(1) and termination is in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001 (West 2014); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). Though the same evidence may be probative of both issues, both elements must be established and proof of one element does not relieve the petitioner of the burden of proving the other. *See In re C.H.*, 89 S.W.3d at 28; *Holley*, 544 S.W.2d at 370.

In deciding whether to terminate a parent-child relationship, the trial court is given wide latitude in determining the best interest of a minor child. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). There is a strong presumption that the best interest of a child is served by maintaining the relationship between a child and the natural parent. *In re D.T.*, 58 S.W.3d 625, 641 (Tex. App.—Fort Worth 2000, pet. denied). In

4

*Holley,* the Supreme Court considered the following non-exclusive factors: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72. These factors are not exhaustive; some listed factors may be inapplicable to some cases, while other factors not on the list may also be considered when appropriate. *In re C.H.*, 89 S.W.3d at 27. When, as here, the trial court denies a petition to terminate the parent-child relationship, the court shall render any order that is in the best interest of the child. TEX. FAM. CODE ANN. § 161.205 (West 2014).

In the companion case, the trial court terminated Hugo's parental rights to T.H.A.G.'s half-brother. In its conclusions of law, the trial court justified termination of Hugo's parental rights to that child because Maria's sister is married and has a stable home and the child has a relationship with his step-father who has plans to adopt him. To the contrary, the trial court made a finding that Maria is not married nor in a stable relationship. Maria argues the trial court ignored the *Holley* factors and relied solely on whether an adoption "is on the horizon" by a step-parent to determine her son's best interest.

A counselor testified at the hearing that Hugo's older son was brought to her for treatment of anxiety and stress. During their seven sessions, he recounted acts of

family violence perpetrated by his father against his mother. The counselor testified the memories were very authentic and the child was honest. She opined it was in his best interest to terminate the parent-child relationship.

On the other hand, the counselor had only two visits with T.H.A.G. when he was four years old. She described him as a "sweet little boy who was silent." She found his lack of communication disturbing, and her opinion regarding any contact between him and his father was the same as for the older brother. However, when questioned by the court on whether the same situation existed as with the older brother, she testified "there's no way for me to know other than the fact that they are brothers."

At the time of the hearing, Maria and T.H.A.G. were living with her sister and her sister's husband and other children. She testified that when she lived in Mexico, Hugo was very abusive to her and her son. She was locked away for years by him, and he constantly threatened her family. Other than the testimony of Maria and her sister, there was no other evidence to support the allegations of years of abuse.

Hugo testified that Maria's allegations, as well as her sister's, were all lies. He acknowledged both are good mothers but believed Maria's older sister sought revenge because he left her for Maria. He adamantly denied being violent or ever threatening Maria's family. Two character witnesses testified to his good character and non-violent nature.

At the close of the testimony, the trial court cleared the courtroom and interviewed Hugo's older son with only the court reporter present. The child recalled instances of family violence between his parents when they lived in Mexico and

6

expressed to the court that he did not wish to visit or see his father. The child was living in a stable home and referred to his stepfather as "dad" during the interview.

The trial court acknowledged the difficulty in terminating the parental rights of a parent as to one child and not another. Regardless of the trial court's reliance on family violence issues as a ground to justify termination of parental rights to Hugo's older son, and whether the same grounds existed as to T.H.A.G., the court applied the best interest prong of section 161.001 of the Family Code differently to each child. The trial court concluded there was no basis for the counselor's opinion that termination of the parent-child relationship between Hugo and T.H.A.G. was in the child's best interest. The trial court believed termination at that point was premature without affording the parent-child relationship an opportunity to develop.

Not all of the *Holley* factors apply in this case. T.H.A.G.'s desires are not known and programs available to assist the parents are not a factor. However, the trial court did consider the child's emotional needs now and in the future, any potential danger now and in the future, future plans for the child and the stability of the child's home. The trial court's focus was not limited to whether an adoption was pending as Maria suggests. Without clear and convincing evidence to support a best interest determination, a trial court errs if it terminates the parent-child relationship. *See* TEX. FAM. CODE ANN. § 161.001(1) and (2) (West 2014). We defer to the factfinder in matters of credibility and demeanor, and particularly so in family law matters. *Van Heerden v. Van Heerden*, 321 S.W.3d 869, 874 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Accordingly, we conclude the trial court did not err in denying Maria's petition to terminate the parent-child relationship between Hugo and T.H.A.G and in finding that it

7

is in T.H.A.G.'s best interest to have supervised visitation with his father. Issue one is overruled.

## ISSUE TWO—MODIFICATION OF POSSESSION AND ACCESS

By issue two, Maria contends the trial court abused its discretion in modifying Hugo's possession and access to their son without a material and substantial change. We disagree.[3]

We review a trial court's modification order in a family law case for abuse of discretion. *In re M.S.F. and M.S.F.,* 383 S.W.3d 712, 715 (Tex. App.—Amarillo 2012, no pet.). Absent a clear abuse of discretion, the trial court's order modifying the prior order will not be disturbed on appeal. *Id.* A trial court abuses its discretion when it acts arbitrarily or unreasonably or when it clearly fails to correctly analyze or apply the law. *In re D.S.,* 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

Section 156.101 of the Family Code provides for modification of an order for, among other things, possession of or access to a child if modification would be in the child's best interest. TEX. FAM. CODE ANN. § 156.101(a). The relevant ground for modification in this appeal is whether there has been a material or substantial change in the circumstances of the child, a conservator or other party affected by the prior order. *See id.* The threshold inquiry in a modification suit is whether the movant has met the burden of demonstrating a material and substantial change by a preponderance of the

---

[3] Hugo asserts this issue was waived; however, we review Maria's contention in the interest of justice.

8

evidence. *See Zeifman v. Michels*, 212 S.W.3d 582, 589 (Tex. App.—Austin 2006, pet. denied); *In re T.M.P.*, 417 S.W.3d 557, 563 (Tex. App.—El Paso 2013, no pet.).

In considering whether a change of circumstances has occurred, the trial court compares the evidence that existed at the time of the entry of the prior order with the evidence that exists at the time of the hearing on the petition to modify. *In re W.C.B.*, 337 S.W.3d 510, 514 (Tex. App.—Dallas 2011, no pet.). In deciding whether a material and substantial change of circumstances has occurred, a trial court is not confined to rigid or definite guidelines. *Zeifman*, 212 S.W.3d at 593. Instead, the court's determination is fact-specific and must be made according to the circumstances as they arise. *Id.* Some material and substantial changes considered by other courts include (1) marriage of one of the parties, (2) poisoning of the child's mind by one of the parties, (3) change in the home surroundings, (4) mistreatment of the child by a parent or step-parent or (5) a parent's becoming an improper person to exercise custody. *See In re Marriage of Chandler*, 914 S.W.2d 252, 254 (Tex. App.—Amarillo 1996, no writ).

During the hearing, Maria moved for directed verdict on the modification issue arguing that none of the grounds in section 156.101(a) of the Family Code had been established to justify modification of the prior order. The motion was overruled. Here, Maria relies on an interrogatory in which Hugo was asked to identify the material and substantial change in circumstances to which he replied "of no consequence except for [Hugo] will clarify." She also asserts Hugo failed to prove a material and substantial change during his case-in-chief.

9

Hugo admits his answer to the interrogatory in question was "vague, unclear and limited" but he offered to clarify his answer. The issues before this Court are relatively uncomplicated family law issues. However, they become complicated due to the underlying companion case, which is not before this Court.

The original order that is the basis of the underlying modification suit was rendered by default following substituted service. Hugo had no visitation rights under that order. He liquidated his business and traveled to the United States to locate T.H.A.G. He testified he loved him very much and wanted to establish a relationship with him. Comparing the situation that existed at the time of the entry of the first order with the conditions that existed at the time of the modification hearing, we conclude Hugo established by a preponderance of the evidence that material and substantial changes had occurred and the trial court did not abuse its discretion in modifying the prior order. Issue two is overruled.

## ISSUE THREE—GEOGRAPHIC RESTRICTION

By issue three, Maria asserts the trial court abused its discretion by including a geographical restriction absent a pleading requesting such relief. Hugo asserts the issue was not preserved for review. We disagree with Hugo but agree with Maria that the geographic restriction in the modification order was erroneously included.

We first address Hugo's waiver argument. He argues Maria failed to move to dismiss his modification suit or seek compliance with section 156.102 of the Texas Family Code for failing to file an affidavit with his pleading seeking modification of the designation of the person having the exclusive right to designate the primary residence

10

of the child when suit is filed within one year of a prior order. TEX. FAM. CODE ANN. § 156.102(a) (West 2014).[4] Hugo did not file an affidavit with his *Petition to Modify Parent-Child Relationship.* However, he was not required to because he sought modification under section 156.101 for modification of possession and access and not to modify the designation of the person with the exclusive right to designate T.H.A.G.'s primary residence. By his petition, he requested "reasonable access and possession of his child as the current order does not provide for such." He was seeking visitation with his son, not managing conservatorship.

During redirect examination, Hugo was asked if he was requesting the court to restrict the residence of the mother so his child would not be taken out of state or out of country. Maria's counsel objected on the ground that a geographical restriction had not been raised in the case, and Hugo had not given any notice he was seeking a geographical restriction. The objection was overruled, and Hugo answered affirmatively on wanting to restrict the mother's residence so his child would not be taken from him again.

Rule 33.1(a) of the Texas Rules of Appellate Procedure requires a request, objection or motion stating sufficiently specific grounds of the complaint and a ruling on the request, objection or motion to preserve the complaint for appellate review. Maria objected to questioning on restricting her residency because she had no notice of the issue, and the trial court overruled the objection. That is sufficient to preserve the issue for consideration.

---

[4] The statute provides "[i]f a suit seeking to modify the designation of the person having the exclusive right to designate the primary residence of a child is filed not later than one year after the earlier of the date of the rendition of the order . . . the person filing the suit shall execute and attach an affidavit as provided in Subsection (b)."

Pleadings must give reasonable notice of the claims asserted. *Flowers v. Flowers*, 407 S.W.3d 452, 457 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The petition must give fair and adequate notice of claims being asserted, and if an appellate court cannot reasonably infer that the petition contains a given claim, then it must conclude the petition does not contain the claim. *Id.* at 458. Hugo did not plead for a geographical restriction. The issue was not tried by consent. Thus, the court's order does not conform to the pleadings, *see* TEX. R. CIV. P. 301, and the trial court abused its discretion in imposing a geographical restriction that Maria shall have the exclusive right to designate T.H.A.G.'s primary residence "within Wilbarger County, Texas." Issue three is sustained.

## CONCLUSION

Having sustained issue three, we reform the *Order in Suit to Modify Parent-Child Relationship* to delete "within Wilbarger County, Texas" on page 2 of the order. As reformed, the trial court's order is affirmed.

Patrick A. Pirtle
Justice