**Affirmed in Part, Reversed in Part, and Remanded and Memorandum Opinion filed August 27, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00217-CV

---

## IN THE INTEREST OF R.R.A., H.G.A., H.B.A., CHILDREN

---

**On Appeal from the 308th District Court
Harris County, Texas
Trial Court Cause No. 2019-63090**

---

## MEMORANDUM OPINION

This case is on remand from the Supreme Court of Texas to determine whether the evidence is legally and factually sufficient to support the trial court's finding that termination of appellant Father's parental rights was in the children's best interest. Because we conclude that the evidence is factually insufficient, we reverse the trial court's order in part and remand for a new trial on the best-interest issue.

### I.   BACKGROUND

We detailed the facts of this case in our previous opinion. *See In re R.R.A.,*

654 S.W.3d 535, 541–44 (Tex. App.—Houston [14th Dist.] 2021), *rev'd*, 687 S.W.3d 269 (Tex. 2024). The children subject to the suit were removed from Father's care in March of 2020 after the Department received a report that the children and Father were homeless and living out of Father's car. Father tested positive for methamphetamine through June, and then had several negative drug tests and completed outpatient treatment. The Department initially placed the children in foster care, but thereafter place the children with Father's mother ("Grandmother") after Father's initial compliance with the family service plan.

In October, Father tested positive for marijuana, and the Department requested that he complete another outpatient drug treatment program. At this point, Father stopped complying with the plan. In February, Grandmother drove herself to the hospital, leaving the children unsupervised with Father. Father's sister called the police, and upon arriving at Grandmother's house, the police found an acquaintance of Father hiding in a closet and arrested her for providing false identification. Upon her arrest, the police discovered methamphetamine and drug paraphernalia in her purse.

The trial court ordered the children placed back in foster care. While Father's visitation rights were reinstated in June of 2021, Father never again responded to communications about scheduling visits. Father testified that he was unable to communicate with the Department because he did not own any electronic communication devices.

The Department filed a petition to terminate Father's parental rights to his three children, which was tried to the bench. The trial court terminated Father's parental rights to his three children after finding that termination was proper under § 161.001(b)(1)(D), (E), and (P) and in the children's best interest.

Father appealed and challenged the legal and factual sufficiency of the

evidence of both the statutory predicate grounds for termination and the trial court's best interest finding. Because the Supreme Court of Texas held that there is sufficient evidence supporting termination of Father's parental rights under one of the statutory predicate grounds, we now address whether the evidence was legally and factually sufficient to support the trial court's best-interest finding. We detail the relevant trial evidence below.

## A. STANDARD OF REVIEW

Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see Stantosky v. Kramer*, 455 U.S. 745, 753 (1982). "Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases." *In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring). Accordingly, termination proceedings must be strictly scrutinized. *Id.* at 112. In such cases, due process requires application of the "clear and convincing" standard of proof. *Id.* (citing *Stantosky*, 455 U.S. at 769; *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)). This intermediate standard falls between the preponderance of the evidence standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re L.J.N.*, 329 S.W.3d at 671. "'Clear and convincing evidence' means a 'measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) (quoting Tex. Fam. Code Ann. § 101.007); *see In re K.M.L.*, 443 S.W.3d at 112–13 ("In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and

suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true.").

In a legal sufficiency review, a court should view the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *In re J.F.C.*, 96 S.W.3d at 266–67. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, viewing the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* This does not mean that a court must disregard all evidence that does not support the finding. *Id.* Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *Id.*

If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient. *Id..* In a factual-sufficiency review, the appellate court must consider whether disputed evidence is such that a reasonable fact finder could not have resolved it in favor of the finding. *In re A.C.*, 560 S.W.3d at 631. Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true. *Id.*

4

## A. APPLICABLE LAW

In determining the child's best interest, the factfinder considers the *Holley* factors: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parents' acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are non-exclusive, and the best interest finding does not require proof of any unique set of factors. *See In re J.J.C.*, 302 S.W.3d 436, 447 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Stability and permanence are paramount in the upbringing of children. *In re J.D.*, 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

## B. ANALYSIS

### (1) the desires of the child

At the time of the final hearing, the oldest child was four years old, and the twins were two years old. Under these circumstances, the factfinder may consider with whom the child has bonded, whether the child is receiving good care in that placement, and whether the child has spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The Department's caseworker testified that the children were bonded with Father and had a good, loving relationship with him. They were happy and healthy and were physically interactive with Father, and they showed affection toward him.

### (2) the present and future physical and emotional needs of the child and

5

**(3) the present and future emotional and physical danger to the child**

There is no evidence in the record that the children's physical and emotional needs were not being met when they were under Father's care; rather, the evidence is only that they were healthy and happy. Father testified that he loved the children and would be able to live with Grandmother until he was able to find employment. Grandmother testified that Father took care of the children until the Department took them into its care.

However, there is evidence that Father has a history of drug use combined with attendant circumstances that pose a risk of harm to the children's emotional and physical wellbeing. There is also evidence that Father failed to visit the children for more than six months before trial.

**(4) the parental abilities of the persons seeking custody**

By all accounts, the children were clean, healthy, and well-fed, and they had no developmental delays. Father's family service plan states that Father "has basic knowledge of parenting his children but could possibly benefit from parenting class to gain more insight." At the time of the final hearing, the Father had stopped complying with his family service plan. Father's medical records note that he reported "that he had been feeling sad and depressed because 'I worry about losing kids into [a] foster home.'"

**(5) the programs available to assist those persons seeking custody in promoting the best interest of the child**

The Department's caseworker, Jones, explained that Father performed well initially by participating in the services and completing parenting classes, individual counseling, and substance abuse treatment. After completing his substance abuse treatment, Father no longer wanted to participate in services, and he also tested positive for marijuana in October 2020. The Department then asked

Father to complete another substance abuse assessment, which he did, and another supporting out-patient treatment, which he refused. Father also subsequently stopped participating in drug tests.

**(6) the plans for the child by the individuals or agency seeking custody and (7) the stability of the home or proposed placement**

Father's plan included the assistance of his mother in providing a home and stability for the children. Grandmother testified that she would allow the children and Father to live with her, if necessary, to support the children. Grandmother also testified that her two daughters were willing to help Father with the children.

**(8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate**

There was evidence that the Department cancelled some of Father's visitations after one of the children's therapist raised a concern based on the progress of one child. There was also evidence that Father was unsupervised with the children, in violation of the trial court's order, and that Father's friend present at that time was arrested for possession of drug paraphernalia and methamphetamine.

**and (9) any excuse for the parents' acts or omissions**

Father testified that he did not have a way to contact the Department and that he had not visited the children because the Department cancelled the last visit in June 2021. He explained that he did not engage in drug testing because: "I got upset because [the Department's case worker] canceled four visitations since May . . . , so I felt like why even do it if they're not going to let me see my kids regardless. I just got super depressed behind it, you know, like I was just fighting for no reason." Father testified that it had "been very stressful."

Father explained that he did not get any communication from the

7

Department after June of 2021 about setting up visitation because he did not have a telephone or any other electronic device. Father testified he complied substantially with the service plan "in the beginning . . . until I got discouraged by everything." Father was supervising the children at a time when he was prohibited from doing so because his mother—the children's caretaker—went to the hospital due to a medical emergency. And while Father's friend was present and arrested with drugs, there is no evidence that Father was aware of the presence of drugs in his friend's purse, and "Father tested *negative* for drugs a few days later—so any suggestion that he was doing drugs with the arrested female visitor instead of caring for his children is not supported by the evidence." *See In re R.R.A.*, 687 S.W.3d at 283 (Blacklock, J., dissenting).

While Father was homeless at the time the children were taken into care, he testified that he is a seasonal blue-collar worker and, while unemployed at the time of trial, he was seeking employment. Father testified he had been the children's primary caregiver before the children's removal and that the children's mother abandoned them when the twins were six months old. Jones testified there was no evidence that Father ever physically harmed the children, that he had ever used drugs around the children, or that he threatened the children.

## C. SUMMARY

Viewing the evidence in the light most favorable to the trial court's finding, we conclude that the evidence is legally sufficient that termination of Father's parental rights was in the children's best interest. *See In re J.F.C.*, 96 S.W.3d at 266.

As to factually sufficiency, however, there is disputed evidence that (1) a reasonable factfinder could not have credited in favor of a finding and (2) is so significant that the factfinder could not have formed a firm belief or conviction that

termination was in the children's best interest. *See In re A.C.*, 560 S.W.3d at 631. Here, there was evidence that the children were healthy, happy, and bonded with Father, and that Father cared for, provided, and loved his children and was very close to his children. Additionally, Father's family members were willing to help Father care for the children. While not a model parent, Father's love for his children, the children's healthy and happy state when they were taken in by the Department, the strong bond between the children and Father, and the presence and willingness of other family members to help Father take care of the children, would prevent a reasonable factfinder from forming a firm belief or conviction that termination was in the children's best interest. *See id.*

We sustain Father's second issue.

## II.  CONCLUSION

Because we conclude that the evidence is factually insufficient to support the trial court's finding that termination of Father's parental rights to the children was in the children's best interest, we reverse that part of the trial court's judgment and remand for a new trial on the best-interest issue. *See In re J.O.A.*, 283 S.W.3d 336, 347 (Tex. 2009) ("Because a remand is . . . the appropriate judgment when evidence is found to have been factually insufficient, we modify the [intermediary appellate] court's judgment to remand the cause to the trial court for a new trial on the issue of Timothy's parental rights."); *see also Van Heerden v. Van Heerden*, 321 S.W.3d 869, 874–75 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (stating that in cases involving involuntary termination of parental rights, "appellate courts are not in a position to determine whether simply to deny the petition for termination or render some other order in the best interest of the child").


/s/     Margaret "Meg" Poissant
         Justice


Panel consists of Justices Zimmerer, Spain, and Poissant.

10