Affirmed in Part and
Reversed and Remanded in Part and Opinion filed August
31, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00708-CV



Ann E. Van
Heerden, Appellant 

v.

Casper J. Van
Heerden, Appellee 



On Appeal from
the 245th District Court

Harris County, Texas

Trial Court
Cause No. 2008-36366



 

OPINION 

            Appellant Ann E.
Van Heerden appeals the trial court’s judgment of the final divorce decree
between herself and appellee Casper J. Van Heerden.  Ann specifically appeals the
sections of the decree concerning conservatorship, travel restrictions, and the
division of the marital estate.  Ann contends that: (1) the trial court erred
in deciding Casper should be primary joint managing conservator of the children
because the parties had an unrevoked stipulation that Ann would be primary
conservator; (2) Ann was deprived of her due-process rights because the trial
court’s judgment was contrary to the parties’ stipulation; (3) the trial court
erred because it violated the parties’ stipulation, which Ann argues was an
effective Rule 11 agreement; (4) the trial court abused its discretion in
awarding primary conservatorship to Casper because there was no evidence or
pleadings supporting the judgment; (5) the trial court abused its discretion by
including travel restrictions in the final divorce decree; (6) the trial court
erred in striking the testimony of Ann’s three fact witnesses on the basis that
Ann’s disclosure responses did not conform with Texas Rule of Civil Procedure
194.2(e); and (7) the trial court abused its discretion because in dividing the
marital estate, the court used incorrect property values.  We affirm in part,
and reverse in part, and remand for further proceedings consistent with this
opinion.   

I

Ann and Casper met in 1986 and were married on March
24, 1990.  During the nineteen-year marriage, the couple had three
children, E.A.V., born December 10, 1997; A.M.V., born June 3, 2000; and
A.E.V., born November 15, 2004.  The Van Heerdens separated on May 31,
2008, and they were granted a divorce on March 25, 2009.  

Casper is a citizen of Botswana, South Africa. 
The couple met in Botswana while Ann was volunteering with the Peace
Corps.  Two years later, they moved to the United States and were married
shortly thereafter.  Ann and Casper lived in Texas while Ann finished graduate
school before moving to Wisconsin.  Twelve years later, the Van Heerdens
moved back to Texas where they resided until this suit was
filed.      

On June 13, 2008, Ann
filed her original petition for divorce and subsequently filed her amended
petition on December 9, 2008.  Casper filed a counterpetition on July 2,
2008, and an amended counterpetition for divorce on March 16, 2009.  After
a three-day bench trial, the trial court rendered a judgment dissolving the Van
Heerdens’ marriage, dividing the Van Heerdens’ marital estate, and naming
Casper the primary joint managing conservator of the children.  The trial
court signed the final decree of divorce on May 15, 2009.  The trial court
also made findings of fact and conclusions of law.  This appeal
followed.    

II

Ann’s first six issues on appeal concern her
conservatorship rights.  In her first and third issues, Ann complains that the
trial court erred because its judgment conflicted with the parties’ unrevoked
stipulation or Rule 11 agreement that Ann would be the primary joint managing
conservator.  Additionally, in her second issue, she contends that under section
153.007 of the Texas Family Code, if the court did not agree with the parties’
stipulation, then it needed to give the parties notice and an opportunity to present
evidence about conservatorship.  In her fourth issue, Ann argues that the trial
court abused its discretion in awarding primary conservatorship to Casper
because there was no evidence or pleadings supporting the judgment.  In her
fifth issue, Ann asserts that the trial court abused its discretion because it
included travel restrictions in the final divorce decree that were not pleaded
by either party.  Finally, in her sixth issue, Ann contends that the trial
court erred in striking the testimony of her three fact witnesses on the basis
that Ann’s disclosure responses did not conform to Texas Rule of Civil
Procedure 194.2.  On these issues, Ann requests that we either render a
judgment designating Ann as primary joint managing conservator with the right
to choose the primary domicile for the children or reverse and remand the
issues back to the trial court for a new trial.

Casper argues that there
never was an agreed stipulation or a Rule 11 agreement naming which parent was
going to be the primary conservator; therefore, Ann’s due process rights were
not violated.  Even if there were a stipulation, Casper contends that the court
could have decided that the agreement was not in the best interest of the
children.  Next, Casper asserts that there was sufficient evidence for the
trial court to name him primary joint managing conservator, and it was in the
best interest of the children for the trial court to make that decision.  In
response to Ann’s fifth issue, Casper argues that the trial court did not abuse
its discretion in restricting the children’s travel or in allowing Casper to
possess the children’s passports because evidence was introduced at trial that these
restrictions would be in the best interest of the children.  Finally, Casper
contends the trial court did not abuse its discretion in excluding Ann’s
witnesses because her disclosure responses were insufficient, and the court’s discovery
sanctions were appropriate.  

A

            We must decide
whether Ann’s request for this court to render judgment in her favor is the
appropriate remedy.  When reversing the trial court’s judgment or appealable
order, we typically render the judgment or order that the trial court should
have rendered.  See Tex. R. App. P. 43.3; In re A.S., 261 S.W.3d
76, 93 n.19 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); Colbert v.
Dep’t of Family & Protective Servs., 227 S.W.3d 799, 816 (Tex.
App.—Houston [1st Dist.] 2006, no pet.).  Appellate courts, however, can remand
a case when further proceedings are necessary or when the interest of justice
requires another trial.  Tex. R. App. P. 43.3.  This is often the case in
situations that require reweighing evidence or finding facts.  Although
appellate courts can unfind facts, they are not fact-finding courts.  See
Parsons v. Parsons, 722 S.W.2d 751, 753 (Tex. App.—Houston [14th Dist.]
1986, no writ).  

            In determining
conservatorship issues, trial courts focus on the best interest of the child.  Vazquez
v. Vazquez, 292 S.W.3d 80, 85 (Tex. App.—Houston [14th Dist.] 2007, no
pet.).  A trial court has wide latitude or discretion in deciding what is in
the child’s best interest.  Id.  Additionally, custody disputes are
inherently fact-intensive.  In re Vogel, 261 S.W.3d 917, 925 (Tex.
App.—Houston [14th Dist.] 2008, no pet.).  We routinely defer to the fact-finder
in matters of credibility and demeanor, and particularly so in custody
proceedings.  Id.  We have previously stated in cases involving
involuntary termination of parental rights that appellate courts are “not in a
position to determine whether simply to deny the petition for termination or
render some other order in the best interest of the child.”  In re C.M.C.,
273 S.W.3d 862, 882 n.13 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (quoting
Colbert, 227 S.W.3d at 816).  The circumstances surrounding the
parent-child relationship may have changed since the trial court’s original
judgment, which would require a fact-finder to assess the new situation.  Id. 
As with involuntary termination, the issue of conservatorship requires a
fact-finder to review factors in deciding the best interest of the child.  See
Vazquez, 292 S.W.3d at 85; see cf. In re C.M.C., 273
S.W.3d at 882 n.13.  Thus, should we determine that the trial court erroneously
handled the conservatorship in this case, we will remand rather than render.   

B

            We will first
address Ann’s sixth issue concerning the exclusion of her fact witnesses.  Ann maintains
that she sufficiently responded to Casper’s request for disclosure relating to those
witnesses—her father and two sisters—and the trial court erroneously struck
their testimony.  Furthermore, Ann argues that even if her responses warranted
discovery sanctions, the sanctions the trial court imposed were too severe,
especially when making a decision in the best interest of the children.  Casper
contends that Ann’s responses were insufficient under Texas Rule of Civil
Procedure 194.2(e) because they provided no description of her witnesses’
connection to the case, other than noting how each was related to her.  Casper
urges that the sanctions were appropriate because under Texas Rule of Civil
Procedure 193.6 a partial disclosure response warrants an automatic exclusion
of that witness.  Additionally, Casper argues that even if Ann’s disclosure
responses were sufficient, any error the trial court made was harmless because
the stricken witnesses’ testimony was cumulative and would not have changed the
court’s ruling.   

The admission or exclusion of evidence rests within
the sound discretion of the trial court.  State v. Bristol Hotel Asset Co.,
65 S.W.3d 638, 647 (Tex. 2001); City of Brownsville v. Alvarado, 897
S.W.2d 750, 753 (Tex. 1995).  A trial court abuses its discretion in admitting
or excluding evidence if it acts without reference to any guiding rules and
principles or if the act complained of is arbitrary and unreasonable.  Carpenter
v. Cimarron Hydrocarbons Corp., 98 S.W.3d 682, 687 (Tex. 2002); Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985).  To show
the trial court abused its discretion, the appellant must demonstrate that: (1)
the court erred in not admitting the evidence; (2) the excluded evidence was
controlling on a material issue dispositive of the case and was not cumulative;
and (3) the error probably caused rendition of an improper judgment in the
case.  See Tex. Dep’t of Transp. v. Able, 35 S.W.3d 608, 617 (Tex.
2000); Sharma v. Vinmar Int’l, Ltd., 231 S.W.3d 405, 422 (Tex.
App.—Houston [14th Dist.] 2007, no pet.); see Tex. R. App. P. 44.1(a)
(discussing reversible error).  If there is a legitimate basis for the trial
court’s evidentiary ruling, the appellate court must uphold the ruling.  Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).  

            During written
discovery, a party may request disclosure of the name, address, and telephone
number of persons having knowledge of relevant facts, and a brief statement of
each identified person’s connection with the case.  Tex. R. Civ. P. 194.2(e).  When
responding to written discovery, a party must make a complete response.  Tex.
R. Civ. P. 193.1.  If a party later learns that its response is incomplete and
no longer correct, the party must amend or supplement the response.   Tex. R.
Civ. P. 193.5(a).  A party who fails to disclose information concerning a
nonparty witness in response to a discovery request may not offer that
witness’s testimony unless the court finds there was good cause for the failure
or the failure did not unfairly surprise or unfairly prejudice the other
parties.  Tex. R. Civ. P. 193.6(a).  The burden of establishing good cause or
the lack of surprise or unfair prejudice is on the party seeking to introduce
the evidence or call the witness.  Tex. R. Civ. P. 193.6(b).

            As the Austin
court of appeals has recently noted, it is not clear what information is needed
to satisfy Rule 194.2(e)’s requirement of a “brief statement of each identified
person’s connection with the case.”  See L.B. v. Tex. Dep’t of Family &
Protective Servs., No. 03-09-00429-CV, 2010 WL 1404608, at *6 n.16 (Tex.
App.—Austin Apr. 9, 2010, no pet.) (mem. op.).  The comment to Texas Rule of
Civil Procedure 192.3(c), which discusses the scope of discovery in relation to
“persons with knowledge of relevant facts,” states the “provision does not
contemplate a narrative statement of the facts the person knows, but at most a
few words describing the person’s identity as relevant to the lawsuit.”  Tex.
R. Civ. P. 192.3(c) cmt. 3.  The comment then provides examples such as
“treating physician,” “chief financial officer,” “director,” and “plaintiff’s
mother and eyewitness to accident.”  Id.  Additionally, courts have held
that “social worker” and “eyewitness” are sufficient to describe a person’s
connection to a case.  L.B., 2010 WL 1404608, at *6 (discussing the term
“social worker”); Beam v. A.H. Chaney, Inc., 56 S.W.3d 920, 923–24 (Tex.
App.—Fort Worth 2001, pet. denied) (stating persons with relevant knowledge
about the facts were properly identified as eyewitnesses to the accident, but the
only witness called was not identified, which without a showing of good cause
or lack of surprise or prejudice would trigger automatic exclusion of that
witness’s testimony).[1]


Ann argues that Casper is mischaracterizing the
requirements of Rule 194.2(e), and in her brief, she recounts that Casper
complained to the trial court that her responses to disclosure did not “give
any detailed information as to any information [her witnesses] would be
testifying to,” did not provide “a description of the knowledge of [the
witnesses],” or did not “disclose, generally what [the witnesses were] going to
testify to.”  Ann contends that Rule 194.2(e) does not impose these
requirements.

Under Rule 194.2(e), the only requirement beyond a
person’s name, address, and telephone number, is a brief statement describing that
person’s connection with the case.  See Tex. R. Civ. P. 194.2(e).  The
comment to the Rule 192.3(c) even specifies this statement should not be more
than a few words describing a person’s identity as relevant to the lawsuit.  Tex.
R. Civ. P. 192.3(c) cmt. 3.  We believe Casper’s interpretation of the
requirements of Rule 192.3(e) is unnecessarily onerous.  Based on the facts of
this case, the relationship of the parties, and the nature of the trial, Ann’s
disclosure responses were sufficient to satisfy the rule.  Ann’s disclosure
responses of “Petitioner’s father” and “Petitioner’s sister” adequately
identify those witnesses’ connection to the case or identity as relevant to the
lawsuit.[2]

C

To demonstrate the trial court abused its discretion,
the appellant must not only show the court erred in excluding the evidence, but
must also show that the excluded evidence was controlling on a material issue
dispositive of the case and that the evidence was not cumulative.  Able,
35 S.W.3d at 617; Sharma, 231 S.W.3d at 422.  Casper contends the
stricken testimony was not controlling or material to any issue in the case. 
He also complains that even if the testimony was material, the trial court’s
decision to strike it was harmless because the testimony was cumulative of
other witnesses’ testimony.  

After reviewing the stricken testimony, we conclude that
the testimony of Ann’s fact witnesses is material to the conservatorship issues—the
welfare of the children; the duty to support them; the duty of care, control,
protection, and reasonable discipline of the children; the duty to provide for
them; and any restrictions related to travel and access to passports.  Although
Texas courts often correctly exclude evidence because it is cumulative, the
fact that another witness may have given substantially the same testimony is
not the decisive factor.  See In re N.R.C., 94 S.W.3d 799, 807 (Tex.
App.—Houston [14th Dist.] 2002, pet. denied).  Rather, this court considers
whether the stricken testimony would have added substantial weight to the
case.  Id.  To defend her parental rights, Ann may require several
witnesses addressing the same material issue because the testimony may come
from witnesses with different vantage points.  Id.  “Indeed, litigants
may, and often do, offer evidence from several different witnesses to prove one
specific material fact.”  Id.  

Because Ann’s three facts witnesses based their
testimony on their own peculiar observations, their testimony was unique and
not cumulative.  And the fact that the three witnesses are related to Ann does
not make their testimony any more inappropriately cumulative.  See id.
(discussing that appellant’s mother and boyfriend may be interested witnesses,
but that possibility does not make their testimony unworthy of consideration). 
“Rare indeed is the family courtroom in which multiple interested witnesses do
not testify as to the best interests of the children . . . .”  Id.  We
do not conclude that the testimony of the stricken witnesses is immaterial or needlessly
cumulative of Ann’s or Casper’s testimony.

D

            Finally, to show
the trial court abused its discretion the appellant must demonstrate the error
probably caused rendition of an improper judgment in the case.  Able, 35
S.W.3d at 617; Sharma, 231 S.W.3d at 422.  In her brief, Ann contends
that the sanction the trial court imposed was “in essence a death-penalty
sanction against her,” and the sanction precluded the introduction of evidence
and right to adjudicate her claim.  She argues that the sanction was excessive,
especially in light of case law urging courts to review all the evidence
when deciding the best interest of the child.  Thus, the trial court’s error
was not harmless.  

It is clear from the record that the trial court
struck Ann’s witnesses based on a violation in her discovery responses.  A
trial court has discretion in sanctioning a party.  See Koslow’s v.
Mackie, 796 S.W.2d 700, 703–04 (Tex. 1990).  A sanction that adjudicates a
claim and precludes the presentation of the merits of the case constitutes a
death-penalty sanction.  In re N.R.C., 94 S.W.3d at 810; In re P.M.B.,
2 S.W.3d 618, 624 (Tex. App.—Houston [14th Dist.] 1999, no pet.).  We have previously
held that the “refusal to permit a parent to call any fact witnesses in a
termination proceeding eviscerates that parent’s ability to present the merits
of her defense.”  In re N.R.C., 94 S.W.3d at 810.  The exclusion of
witnesses is properly characterized as a death-penalty sanction when it means
that a parent has no testimony, other than her own, to defend her parental
rights.  Id.  

As in In re N.R.C., by excluding witnesses,
the trial court prevented Ann from presenting the merits of her defense; the
testimony of other fact witnesses was essential to her conservatorship case.  See,
e.g., In re P.M.B., 2 S.W.3d at 624 (stating that excluding evidence
is an extreme penalty tantamount to striking a party’s pleadings); Roberts
v. Golden Crest Waters, Inc., 1 S.W.3d 291, 292 (Tex. App.—Corpus Christi
1999, no pet.) (stating that the court’s exclusion of all of a party’s
witnesses was a death-penalty sanction because that party was no longer able to
present a case).  The ruling was, therefore, a death-penalty sanction.

            We review the
trial court’s ability to impose sanctions for discovery abuses under the
limitations set out in the Texas Supreme Court’s decision TransAmerican
Natural Gas Corp. v. Powell.  811 S.W.2d 913 (Tex. 1991).  In TransAmerican,
the court created a two-part test for determining whether a sanction is just.  Id.;
In re N.R.C., 94 S.W.3d at 810; Taylor v. Taylor, 254 S.W.3d 527,
533 (Tex. App.—Houston [1st Dist.] 2008, no pet.).  The test requires a
reviewing court to consider (1) whether a direct relationship exists between
the offensive conduct and the sanctions imposed, and (2) whether the sanctions
are excessive.  TransAmerican Natural Gas Corp., 811 S.W.2d at 917; In
re N.R.C., 94 S.W.3d at 810–11.  

            In applying the
first part of the two-part test, we consider whether the sanctions imposed were
directly related to the party’s abusive conduct.  TransAmerican Natural Gas
Corp., 811 S.W.2d at 917; In re N.R.C., 94 S.W.3d at 811; Taylor,
254 S.W.3d at 533.  Because we concluded above that Ann’s disclosure responses
were sufficient, there was no abusive conduct to punish.  Supra Part
II.B.  In the absence of sanctionable conduct, sanctions are unwarranted. 
Thus, the trial court’s sanctions do not pass the first part of TransAmerican’s
two-part test.

            We note that,
even if some sanction had been warranted, “the sanctions imposed in this case
are difficult to reconcile with the legislative mandate that ‘the best interest
of the child shall always be the primary consideration of the court in
determining the issues of conservatorship and possession of and access to the
child.’”  Taylor, 254 S.W.3d at 533 (quoting Tex. Fam. Code Ann. §
153.002 (Vernon 2008)).  This court and other courts have long recognized the
best interest of the child may be a factor influencing a trial court’s decision
on procedural issues.  See, e.g., In re N.R.C., 94 S.W.3d at 813
(concluding a trial court abused its discretion in excluding all of the fact
witnesses for a party in a termination case); In re P.M.B., 2 S.W.3d at
625 (reversing a trial court’s decision to exclude evidence and impose
sanctions in a conservatorship case); Taylor, 254 S.W.3d at 534–35
(holding a trial court’s sanction prohibiting a party from presenting evidence
at trial was not in the best interest of the child in a conservatorship case); In
re C.H., No. 07-04-0428-CV, 2006 WL 3813751, at *2–3 (Tex. App.—Amarillo
Dec. 28, 2006, no pet.) (mem. op.) (affirming trial court’s ruling in a
conservatorship case to allow a late-disclosed witness to testify based on best
interest of child).  In deciding what is in the best interest of the child, a
court must be well-informed as to the surrounding circumstances.  In re
N.R.C., 94 S.W.3d at 812; In re P.M.B., 2 S.W.3d at 624–25.  

A decision on custody, possession, or access can rarely be
well-informed without consideration of the evidence and perspectives of both
[parties].  Because the exclusion of any important evidence as a discovery
sanction can only produce a less-informed decision, contrary to the best
interest of the child, we believe that it should be resorted to only where
lesser sanctions are either impracticable or have been attempted and proven
unsuccessful.

In re P.M.B., 2 S.W.3d
at 625.  Thus, it is a disservice to children to silence potential fact
witnesses who may have probative evidence concerning their best interest.  In
re N.R.C., 94 S.W.3d at 812.  

            The trial court
erred in striking the testimony of Ann’s fact witnesses because her disclosure
responses were sufficient under Rule 194.2(e).  The trial court, therefore,
should not have imposed sanctions, especially sanctions that foreclosed Ann’s
opportunity to present the merits of her case.  The harm these sanctions caused
is apparent.  By barring Ann from presenting any evidence at trial, other than
her own testimony, the trial court stifled her ability to present the merits of
her case.  We hold, on the peculiar facts this case presents, that the trial
court abused its discretion in striking the testimony of Ann’s fact witnesses,
improperly imposed a death-penalty sanction, and unjustifiably prohibited Ann
from presenting a defense.  These errors caused the rendition of an improper
judgment which requires reversal.  See Tex. R. App. P. 44.1(a); In re
N.R.C., 94 S.W.3d at 813.  We sustain Ann’s sixth issue on appeal.  Due to
our disposition of issue six, it is unnecessary to address Ann’s issues one
through five.  

III

In her seventh issue, Ann contends that the trial
court abused its discretion in dividing the community property.  Specifically,
Ann complains that the court (1) overvalued her retirement accounts; (2)
undervalued the vehicle awarded to Casper; (3) undervalued the balance of a
checking account awarded to Casper; and (4) failed to factor in the amount of
community debt allocated to Ann, specifically her attorney’s fees and credit-card
obligations.  

In a divorce decree, the trial court shall divide the
estate of the parties “in a manner that the court deems just and right.”  Tex.
Fam. Code Ann. § 7.001 (Vernon 2006).  On appeal, we review the trial court’s
division of community property for an abuse of discretion.  Knight v. Knight,
301 S.W.3d 723, 728 (Tex. App.—Houston [14th Dist.] 2009, no pet.). We presume
that the trial court properly used its discretion in dividing the community
estate of the parties.  Zagorski v. Zagorski, 116 S.W.3d 309, 313 (Tex.
App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh’g).  Errors in the
valuation of the estate do not require reversal unless the errors made the
division manifestly unjust.  Von Hohn v. Von Hohn, 260 S.W.3d 631, 641
(Tex. App.—Tyler 2008, no pet.).  Thus, to obtain a reversal, Ann must show
that, based on the alleged errors in valuation, the trial court’s division is
manifestly unjust.  See Sharma v. Routh, 302 S.W.3d 355, 360
(Tex. App.—Houston [14th Dist.] 2009, no pet.) (op. on reh’g). 

A

            Ann first
complains that the trial court overvalued the amount in her TIAA-CREF
retirement account.  The trial court awarded Ann her retirement account valued
at $43,517.  In her brief, however, Ann contends that the value of the account
was just $26,698.  In valuing the assets in the estate, if several values are
given, or if a witness testifies that the value may be higher or lower than his
estimate, the court’s determination of the value should be within the ranges in
the evidence.  Cruz v. Cruz, No. 13-04-00540-CV, 2006 WL 2371342, at *3
(Tex. App.—Corpus Christi Aug. 17, 2006, no pet.) (mem. op.); Mata v. Mata,
710 S.W.2d 756, 760 (Tex. App.—Corpus Christi 1986, no writ); Goodwin v.
Goodwin, No. B14-92-00047-CV, 1992 WL 347749, at *2 (Tex. App.—Houston
[14th Dist.] Nov. 25, 1992, no writ).  Casper’s sworn inventory listed
Ann’s retirement account with a value of $43,517 as of September 30, 2008.  On
March 24, 2009, Casper testified that this represented his “most recent
knowledge” of the account’s value.  Ann’s evidence of the account’s value
consisted of testimony that it had lost value since November 2008, but she did
not say by how much.  The only figure she provided was the $26,698 estimate in
her unsworn property-division proposal.  Since the parties offered
contradictory values, it was within the trial court’s discretion to assign a
value to the retirement account that was within the ranges presented.  See Cruz,
2006 WL 2371342, at *3; Mata, 710 S.W.2d at 760; Goodwin, 1992 WL
347749, at *2.  Thus, the trial court did not abuse its discretion in
valuing Ann’s retirement account at $43,517.

B

            Ann also
complains about the valuation of Casper’s Chevrolet Suburban.  The trial court
awarded Casper the Suburban with a value of $17,000.  In her brief, Ann asserts
that the court undervalued the asset by approximately $10,000.  During trial,
Casper testified that the value of the Suburban was $17,000.  This value was
listed on Casper’s sworn inventory.  At the beginning of trial, the court
struck Ann’s sworn inventory.  Ann unsuccessfully attempted to introduce
evidence of the vehicle’s Kelley Blue Book value.  Ann’s only “evidence” of the
vehicle’s value was her unsworn proposed property division.  On direct examination,
Ann’s attorney asked if she would “accept the Suburban at $17,000” and if she
would “accept it at $28,000.”  Ann answered “yes” to both questions.  It was
within the trial court’s discretion to value the vehicle between $17,000 and
$28,000.  See Cruz, 2006 WL 2371342, at *3; Mata, 710 S.W.2d at
760; Goodwin, 1992 WL 347749, at *2.  There was no abuse of the
trial court’s discretion.    

C

            In the final decree
of divorce, the trial court awarded Casper a Wells Fargo checking account
containing $12,900.  Ann had presented evidence during trial that the checking
account was worth $22,000.  When Ann’s counsel cross-examined Casper, however,
he testified that he had spent about $10,000 of it on attorneys’ fees, leaving
the account with about $12,900 as of the date of trial.  Because Ann and Casper
offered conflicting values for the checking account, it was within the judge’s
discretion to assign a value within the ranges presented.  See Cruz,
2006 WL 2371342, at *3; Mata, 710 S.W.2d at 760; Goodwin, 1992 WL
347749, at *2.  In addition, the value of the community property is
generally determined on the date of divorce or as close to that date as
possible.  Handley v. Handley, 122 S.W.3d 904, 908 (Tex. App.—Corpus
Christi 2003, no pet.).  The court granted Ann and Casper’s divorce on March 25,
2009.  Ann presented evidence that the value of the account on February 9, 2009,
was $22,000.  But Casper testified on March 24, 2009, the day before the
divorce was granted, that the value of the account had dropped to about $12,900. 
We cannot conclude that the trial court abused its discretion in valuing the
Wells Fargo checking account awarded to Casper.

 

D

            Ann contends that
the trial court failed to factor in the amount of community debt she was
ordered to pay, specifically the amount of outstanding attorney’s fees and
credit-card debt.  In its final decree of divorce, the trial court ordered that
each party was “responsible for his or her own attorney’s fees, expenses and
costs incurred as a result of the legal representation of this case.”  With
respect to the credit-card debt, both Ann and Casper had credit cards in their
names with community debt on the cards.  Casper testified that he had paid
$9,080 of the community credit-card debt during the separation.  In its final decree,
the trial court ordered Ann to pay $7,400 in community credit-card debt.  We
can find no indication that the division of the community credit-card debt was not
just and right.  See Tex. Fam. Code Ann. § 7.001.  We cannot conclude
that the trial court failed to factor in the amount of debt Ann was ordered to
pay when dividing the estate of the parties.  Because the trial court did not
err in valuing the assets, the division was not manifestly unjust.  See Von
Hohn, 260 S.W.3d at 641.  Thus, we hold that the trial court did not abuse
its discretion in dividing the community property of the parties.  See
Knight, 301 S.W.3d at 728.   Accordingly, we overrule Ann’s seventh issue.

 

*
* *

We
affirm only the part of the final decree that grants the parties’ divorce and
divides the marital estate; we reverse the remainder of the final decree and
remand the case for proceedings in accordance with this court’s opinion.








 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Brown,
Sullivan, and Christopher.









[1]
At oral argument Ann’s counsel contended that these types of
identifications—such as “child’s teacher” or “petitioner’s girlfriend”—are
frequently used in conservatorship cases.  





[2]
Moreover, Casper did not complain about the content of Ann’s disclosure until
trial.  If he believed he needed more information to adequately prepare for
trial, he should have moved to compel more extensive responses.  The discovery
rules are not meant to be used as weapons in an ambush.