**Affirmed and Memorandum Opinion filed June 9, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-20-00408-CV

## IN THE INTEREST OF N.R.G., A MINOR CHILD

**On Appeal from the 247th District Court
Harris County, Texas
Trial Court Cause No. 2017-49664**

## MEMORANDUM OPINION

Appellant M.G. ("Father")[1] appeals the trial court's order in a suit affecting the parent-child relationship, contending the (1) trial court abused its discretion when it excluded the testimony of a court-appointed psychologist, and (2) evidence is legally insufficient to support the attorney's fees awarded to R.G. ("Mother"). We affirm.

---

[1] To preserve the privacy of the minor child, we use pseudonyms or initials to refer to the child, parents, and others involved in this case.

BACKGROUND

Mother met Father in 2015 when she started working at his law firm. Mother and Father started a relationship during a trip to Las Vegas in June or July 2016. In November 2016, Mother found out she was pregnant with Father's child. During Mother's pregnancy, Mother and Father had a turbulent on-again-off-again relationship. When Mother and Father were not on good terms, Father dated J.R. — a woman he had dated before starting a relationship with Mother. Mother gave birth to Norman in the summer of 2017; at the time, Mother and Father were not on good terms.

About two weeks after Norman's birth, Father filed a Petition to Adjudicate Parentage. The petition (1) stated that the purpose of the suit is to establish the parent-child relationship between Father and Norman; (2) stated that it is in Norman's best interest to appoint Father as the sole managing conservator with the exclusive right to designate the primary residence; (3) stated that good cause exists to change Norman's name; (4) requested that orders be entered for child support and that "appropriate orders be made for access to the child and the allocation of the rights and duties of the conservators"; (5) requested that the court appoint an amicus attorney to represent Norman's interests; and (6) requested that "genetic testing be ordered in accordance with chapter 160 of the Texas Family Code."

Even after Father filed his petition, he and Mother continued their turbulent on-again-off-again relationship. In September 2017, they attended a charity event at a hotel in Galveston. Mother called the police alleging Father hit her several times after they got into an argument. Father denied hitting Mother but told the investigating police officers that he had pushed her so he could leave the hotel room and rejoin the charity event. Father was arrested and charged with

misdemeanor assault at the time.[2]

In November 2017, Mother filed an Original Counterpetition in Petition to Adjudicate Paternity (1) stating it is in Norman's best interest to appoint Mother as sole managing conservator; (2) stating Father engaged in a history or pattern of committing family violence during the two-year period preceding the filing of this suit; (3) requesting that Father be ordered to pay child support retroactive to Norman's birth; (4) requesting that the parties be ordered to attend a parent education and family stabilization course; and (5) requesting the appointment of an amicus attorney for Norman.

In December, Father filed an amended Petition in Suit Affecting the Parent-Child Relationship (1) stating that it is in Norman's best interest to appoint Father as the sole managing conservator with the exclusive right to designate the primary residence; and (2) requesting that he be appointed temporary sole managing conservator.

In August 2018, the trial court considered Father's Motion for Child Custody Evaluation and found that a child custody evaluation was appropriate and was in the best interest of the child.[3]  Therefore, the trial court signed an Order for Child Custody Evaluation in September 2018 (1) appointing clinical psychologist, Dr. Laurence Abrams, as custody evaluator; and (2) ordering Dr. Abrams to conduct a child custody evaluation pursuant to section 107.104 of the Texas Family Code "regarding the circumstances and condition of the child the subject of

[2] While this custody case was pending, the Galveston County Criminal District Attorney (Tex. Gov't Code Ann. § 44.001) dismissed the charges because Mother did not want to pursue charges against Father.  Mother testified that, although the assault occurred, she decided to not pursue charges against Father because he offered to drop the custody case in exchange for her not pursuing the assault charges.

[3] The child's amicus attorney also asked for the appointment of an expert custody evaluator.

this suit, each party to this suit, and the residence of any person requesting conservatorship of, possession of, or access to a child the subject of this suit."

Mother and Father tried to mend their dating relationship and reconcile several times during the pending case up until the beginning of 2019, but they were unsuccessful. At some point, Mother started dating another man, and Father continued dating J.R. with whom he was still in a relationship at the time of trial.

On January 16, 2020, Father filed a "Motion for Leave to Late Supplement 194 Request for Disclosure, or in the Alternative Motion for Continuance." The motion stated that Father "through clerical error failed to include the court ordered child custody evaluator in his response to [the] request for disclosure" and that Father is "seeking leave to designate [Dr. Abrams] as an expert witness[]" because his testimony is essential to the claims at issue and Dr. Abrams "has relevant knowledge of the circumstances of the child, [Father and Mother], and relevant facts of the case." Father also alleged that the "request sought does not unfairly surprise or unfairly prejudice [Mother], assert a new substantive matter that reshapes the nature of the case, nor does it detrimentally affect [Mother]'s presentation of their case." Father further argued that all parties had been aware of Dr. Abrams' court ordered designation as custody evaluator for 15 months. In the alternative, Father sought a continuance (1) "to allow opposing parties to conduct discovery regarding any new information presented;" and (2) because Father "needs additional time as the court ordered custody evaluator has yet to submit a written report as ordered or provided an indication of what his recommendation shall be."

Four days before trial on January 23, 2020, the trial court held a hearing on Father's motion. Father argued that his failure to include Dr. Abrams in his response to the request for disclosure was a "clerical error" and there is no unfair

4

surprise because (1) Dr. Abrams is the court-appointed custody evaluator; (2) all parties have been able to talk to him; (3) all parties have known he would testify; (4) "[e]verybody has met this expert, had dinner with him, found out the substance of his recommendation;" and (5) all parties had "ample opportunity, if they wanted to depose him, they could have whether he's designated as an expert or not."

The amicus attorney stated that she and the parties' attorneys had a dinner meeting with Dr. Abrams and certainly knew about him but because Dr. Abrams was not designated, "it stopped one party from actually noticing a deposition of him. And — and he's been taking new information all the way up until at least Monday, because they had a meeting on Monday. So — and I don't think [Mother's attorney] is aware of that fact. I became aware of it on Tuesday." The amicus attorney stated that a continuance would be detrimental to Norman because he "has been in limbo for some time and . . . [Mother and Father] are doing nothing but fighting more with each other, and it's not getting better."

Mother argued against granting Father's motion stating, among other things, that (1) she has a right to rely on all parties following discovery rules; (2) although Dr. Abrams had been appointed in 2018, Father "didn't bother to designate him as an expert"; (3) when she supplemented her expert, Dr. Silverman, Father moved to exclude her expert yet "still didn't designate Dr. Abrams"; and (4) Dr. Abrams continues changing his mind regarding his recommendation.

After hearing the parties' and the amicus attorney's arguments, the trial court denied Father's motion and stated: "So based on the best interest of the child, which I believe is to have this trial sooner rather than later, and also on by [sic] representation by [Mother] that she will not call her expert to testify, I am not granting — I'm denying [Father's] Motion for Leave to Untimely Designate." Dr. Abrams submitted post-hearing reports to the trial court and to the parties which

5

seem to equivocally recommend Father "to have primary custody" of Norman.

A jury trial was held from January 27, 2020, to February 6, 2020, to determine conservatorship of the child and attorney's fees. Before voir dire commenced on January 27, 2020, the trial court heard Father's motion to reconsider the trial court's ruling on his motion for leave to late supplement the request for disclosure which he had filed at midnight the day of trial. In support of his motion to reconsider, Father argued that his November 25, 2019 "Motion for Order of Party to Pay Court Ordered Fees to Expert and Objection to Respondent's Designation of a Supplemental Expert" shows that he "informally" disclosed Dr. Abrams and that "he was likely to testify" as an expert because the motion states that Dr. Abrams (1) is an expert; (2) will testify in court; and (3) "stated verbally that he is recommending [Father] to be the parent with the right to determine domicile of the child the subject to this suit." Father argued that it is "imperative that the jury hears" Dr. Abrams "make a recommendation for" Father and there is no unfair surprise or unfair prejudice because Mother knew since November 2019 "the substance of his recommendation" and "should have asked to depose him."

In response, Mother argued that Dr. Abrams (1) filed "a report two hours after being told that he was no longer going to be an expert witness," and (2) did not follow the rules and requirements of the Texas Family Code 107.109, so that "he would then have to be excluded because he didn't follow the rules." Mother also renewed the objections she made at the previous hearing to letting Dr. Abrams testify, stating that had Dr. Abrams been designated, she "would have deposed him. [She] would have gotten his deposition over to Dr. Silverman and [she] would have had Dr. Silverman down here to tell the Court and this jury why Dr. Abrams might need to retire."

The amicus attorney argued that the "Rules of Civil Procedure are pretty

6

clear . . . on experts . . . and on supplementation of people who are going to testify at the time of trial" irrespective of whether they have been appointed by the court. The amicus attorney also argued that the trial court's earlier ruling "should remain the same," but if the court were to allow Dr. Adams to testify, then "everybody" should be given time to depose him. After hearing argument, the trial court denied Father's motion to reconsider and trial proceeded. Father presented various evidence and testimony from numerous witnesses, including his family, friends, employees, current girlfriend J.R., Mother, and Mother's parents. Mother presented evidence and called one witness: Father's ex-girlfriend who also is the mother of his teenage son. After considering the evidence and testimony presented, the jury decided that Mother should be appointed sole managing conservator of Norman and awarded Mother $30,000 in trial attorney's fees.

A bench trial was then held on February 7, 2020, to determine "nonjury issues," such as Father's visitation schedule, retroactive child support, health insurance, and amicus attorney's fees. The trial court signed an Order in Suit Affecting the Parent-Child Relationship on March 9, 2020. Father filed a request for findings of fact and conclusions of law on March 30, 2020. He filed a motion for new trial on April 2, 2020, and a notice of past due findings of fact and conclusions of law on April 21, 2020. Father filed a timely notice of appeal on June 2, 2010.

## ANALYSIS

### I. Exclusion of Expert Testimony

In his first issue, Father contends that the trial court abused its discretion by excluding Dr. Abrams' testimony at trial because Father showed "he had good cause for the late disclosure" and "showed that there was no unfair surprise" or unfair prejudice to Mother. Father contends the trial court's error caused an

7

improper judgment requiring reversal.[4]

## A. Standard of Review and Applicable Law

We review a trial court's exclusion of evidence under the abuse of discretion standard. *JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 836 (Tex. 2018); *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142 (Tex. 2016). A trial court abuses its discretion when it acts without reference to guiding rules and principles so that its ruling is arbitrary or unreasonable. *See Caffe Ribs*, 487 S.W.3d at 142; *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). When reviewing matters committed to the trial court's discretion, a reviewing court may not substitute its own judgment for that of the trial court. *Barnhart v. Morales*, 459 S.W.3d 733, 742 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Caffe Ribs*, 328 S.W.3d 919, 927 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Thus, the question is not whether the appellate court would have admitted the evidence. *Barnhart*, 459 S.W.3d at 742. Rather, a reviewing court will uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling, even if that ground was not raised in the trial court. *Id.*; *Hooper v. Chittaluru*, 222 S.W.3d 103, 107 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (op. on reh'g). Therefore, we examine all bases for the trial court's decision that are suggested by the record or urged by the parties. *Barnhart*, 459 S.W.3d at 742; *Hooper*, 222 S.W.3d at 107.

Even if the trial court abused its discretion in excluding evidence, the error is not reversible unless it "probably caused the rendition of an improper judgment." *JBS Carriers, Inc.*, 564 S.W.3d at 836; *see also* Tex. R. App. P. 44.1(a)(1) and

---

[4] We note that Father's brief lists five issues in a section of his brief titled "Appellants' Issues Presented." However, the "Argument" section of Father's brief contains only two issues. Within his first issue, Father presents arguments that correlate with issues one through four listed in the "Appellants Issues Presented" section. We have addressed Father's arguments as he presents them in his first issue of his "Argument" section.

*Caffe Ribs*, 487 S.W.3d at 144-45.  The supreme court has recognized the impossibility of establishing a specific test for determining harmful error and, therefore, has "entrusted the matter to the sound discretion of the reviewing court." *Caffe Ribs*, 487 S.W.3d at 145; *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009).  In making this determination, the court must review the entire record.  *Cent. Expressway Sign Assocs.*, 302 S.W.3d at 870; *Barnhart*, 459 S.W.3d at 742.  The complaining party does not have to prove that, but for the exclusion of evidence, a different judgment necessarily would have resulted.  *JBS Carriers, Inc.*, 564 S.W.3d at 836; *Cent. Expressway Sign Assocs.*, 302 S.W.3d at 870.  The complaining party must only show "that the exclusion of evidence probably resulted in the rendition of an improper judgment."  *Cent. Expressway Sign Assocs.*, 302 S.W.3d at 870; *Barnhart*, 459 S.W.3d at 742.  Generally, if erroneously excluded evidence was "crucial to a key issue," then the error was likely harmful, *i.e.*, it probably caused the rendition of an improper judgment, unless the evidence was cumulative or the rest of the evidence was so one-sided that the error likely made no difference in the judgment.  *JBS Carriers, Inc.*, 564 S.W.3d at 836; *Caffe Ribs*, 487 S.W.3d at 145.

During written discovery, a party may request disclosure of any testifying expert.  *See* Tex. R. Civ. P. 194.2(f).  When responding to written discovery, a party must make a complete response.  Tex. R. Civ. P. 193.1.  If a party learns that his response is incomplete or incorrect when made or is no longer complete and correct, the party has an affirmative duty to amend or supplement his response.  *See* Tex. R. Civ. P. 193.5(a).  "An amended or supplemental response must be made reasonably promptly after the party discovers the necessity for such a response"; unless otherwise provided by rules, it is presumed that such a response made less than 30 days before trial is not made reasonably promptly.  Tex. R. Civ.

9

P. 193.5(b).

A party who fails to disclose information concerning a nonparty witness in a timely manner in response to a discovery request may not offer that witness's testimony unless the court finds there was good cause for the failure or the failure did not unfairly surprise or unfairly prejudice the other party. Tex. R. Civ. P. 193.6(a). Thus, Rule 193.6 mandates the exclusion of witnesses who had been disclosed or identified in an untimely manner unless one of two conditions are shown: (1) that the party had good cause for not responding sooner; or (2) that the failure to disclose will not unfairly surprise or prejudice the other party. *See id.* The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness. Tex. R. Civ. P. 193.6(b).

## B. Unfair Surprise or Unfair Prejudice

Father first argues that the trial court abused its discretion in excluding Dr. Abrams' testimony because he offered the trial court "rock-solid evidence" that calling Dr. Abrams would not result in unfair surprise or unfair prejudice. In that regard, Father claims:

> One could not conjure up a clearer textbook example of a late-disclosed witness not being a surprise to any party, than Dr. Abrams. This is so because not only had he been appointed by the court for over a year before trial, he had conducted interviews, tests and observations of both parties and their child. And [Mother] had been ordered by the court to pay 25% of Dr. Abrams' fee. It is simply not logical to conclude that [Mother] was unfairly surprised or unfairly prejudiced by the child custody evaluator who[m] she had met three or four times and had paid money.

(internal record citations omitted).

Based on the record before us, we cannot conclude that the trial court abused

its discretion (1) by finding that Father failed to establish a lack of unfair surprise or unfair prejudice and (2) excluding Dr. Abrams' testimony. With respect to unfair prejudice, Father never mentioned unfair prejudice (except to recite Rule 193.6) during his arguments to the court. Instead, he only argued that Mother was not untimely surprised and solely argued there is a lack of unfair surprise.

During the January 27, 2020 hearing on his motion to reconsider, Father again focused on the lack of surprise and only twice mentioned unfair prejudice in a conclusory manner. First, Father stated that "the two issues are unfair surprise and prejudice" but then proceeded to argue lack of unfair surprise because Mother knew of Dr. Abrams. Second, Father concluded his lack of unfair surprise argument by stating, "There's no unfair surprise and there's no prejudice when she had knowledge of all these go [sic] facts." Father admits as much in his briefing when he states, "little mention, if any, was made of the fact that allowing Dr. Adams to testify would not result in unfair prejudice to" Mother.[5]

Therefore, Father has not preserved a complaint that the trial court erroneously concluded he failed to establish lack of prejudice. *See In re C.F.M.*, No. 05-16-00285-CV, 2018 WL 1704202, at *10 (Tex. App.—Dallas Apr. 9, 2018, pet. denied) (mem. op.) ("Father did not present this argument in the trial court."); *Jacobs Eng'g Grp., Inc. v. Elsey*, 502 S.W.3d 460, 466 n.6 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (Appellant "did not make this argument in the trial court. Consequently, the argument was not preserved and we do not address it."); *Wohlfahrt v. Holloway*, 172 S.W.3d 630, 639-40 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("To have preserved error, a party's argument on appeal must comport with its argument in the trial court."). Additionally, Father conflates

---

[5] Mother argued unfair prejudice in light of the proximity of trial and her lack of resources, especially compared to Father's resources.

unfair surprise and unfair prejudice. Mother's general knowledge of Dr. Abrams does not equate to a lack of unfair prejudice.

On appeal, Father asserts that he established a lack of unfair surprise because (1) Dr. Abrams had been appointed as a custody evaluator over a year before trial; (2) in a November 25, 2019 motion, Father stated that (a) Mother "has failed to pay fees ordered by the Court to be paid to the Court ordered expert, Dr. Lawrence Abrams," (b) "Dr. Abrams will be submitting his final report to the Court and counsel and will testify as an expert in Court to report on his nearly 2 year evaluation," and (c) Dr. Abrams "has stated verbally that he is recommending [Father] to be the parent with the right to determine domicile of the child the subject to this suit;" (3) Mother has met Dr. Abrams several times; (4) Dr. Abrams "had conducted interviews, tests and observations of both parties and their child"; (5) in his Motion for Expert Witness to Appear Telephonically, Father stated he "respectfully requests permission from the Court to allow the Court designated expert witness, Dr. Laurence Abrams, to appear telephonically for a Motion to Modify Temporary Orders on December 03, 2019 at 9:30 a.m."; and (6) at the time the trial court appointed Dr. Abrams in September 2018, it ordered Mother to pay 25 percent of Dr. Abrams' fee.

We note that in the trial court, Father did not argue lack of unfair surprise based on the last three contentions, but even if he had done so, it would not change our conclusion that the trial court did not abuse its discretion in finding that Father failed to establish a lack of unfair surprise. Instead, Father focused his argument in the trial court on claiming that everyone knew of Dr. Abrams, talked to him, knew that he would testify, and "found out the substance of his recommendations." Father additionally argued (at the motion to reconsider hearing) that Mother could not be surprised because he stated in his November 25, 2019 motion that Dr.

12

Abrams is "an expert, he's going to testify, and here's the substance of his recommendation."

To counter Father's argument, Mother stated, among other things:

Your Honor, I have a right, as counsel, to rely on the fact that everybody follows the rules. As you know, I'm up against three lawyers, including the party who's a lawyer on the other side. And as they pointed out, Dr. Abrams was appointed by this Court to do an investigation in 2018. Yet, all three lawyers didn't bother to designate him as an expert. We've supplemented repeatedly. When I supplemented and said I was going to designate . . . Dr. Silverman, they ran down here with a Motion to Exclude because of a late designation and, yet, they still didn't designate Dr. Abrams.

Dr. Abrams, from what I learned today, is still changing his mind. I didn't have an opportunity to depose. When I didn't see him on the list, I will tell you, Your Honor, I assumed they were concerned about his wishy-washiness as well, because he keeps changing his mind and I didn't see this and then we point out that he did have it, and, well, I want to look at this. And I just — I have a right to rely on a lawyer's designations, and they didn't do it. And to then wait until the — until 4:00 o'clock on the afternoon before pretrial and say, oops, yeah, we didn't do it, now we want to designate him, it's unfair.

Is it a surprise that Dr. Abrams is out there, no. But I knew he was out there this whole time and I didn't designate him because I don't plan to call him. So when they know he's out there and they want to designate — or call him, then they should have designated him. And it's completely unfair to my client to now be two days before trial with — with this out there.

And I also want to point out one last thing. My client's resources are about 5 percent of opposing counsel. So when he doesn't designate his expert, why in the world would I spend thousands and thousands of my client's money that needs to go to [the amicus attorney] to depose someone that they didn't bother to designate.

\*                              \*                              \*

So I designated an expert with the anticipation that they would designate Dr. Abrams. They didn't do it. So I never deposed Dr.

> Abrams to be able to take that deposition and give to Dr. Silverman to review and to then come into testify as to what he felt were inconsistencies and unrational (sic) beliefs. All of that. I didn't need to do — I didn't do it because my client doesn't have the money to do it and because they didn't designate.

The trial court could reasonably have concluded that Father failed to prove lack of unfair surprise. Just because all parties knew that Dr. Abrams had been appointed in 2018 and met with Dr. Abrams several times does not mean that Mother was not unfairly surprised by Father's untimely designation concerning his proposed testimony at trial. Mother and the amicus attorney knew Dr. Abrams conducted interviews and tests, but they chose to not designate him as an expert (Mother even hired and designated her own expert). When Father did not make, amend, and supplement his discovery response, Mother appropriately assumed that Father also did not intend to designate him. Further, the trial court order that Mother pay 25% of his fee is not evidence that he would be called as an expert witness by Father; therefore, it is no proof that Mother was not unfairly surprised.

Similarly, neither Father's November 25, 2019 motion, which stated that Dr. Abrams would testify at trial, nor Father requesting in his November 26, 2019 motion "permission from the Court to allow" Dr. Abrams to appear telephonically for a motion to modify temporary orders in early December 2019 proves that Mother was not unfairly surprised. Based on the facts of this case, Mother was justified in concluding that Father did not intend to call Dr. Abrams when Father did not follow through and designate him as a testifying expert. Although Mother acknowledged that it is not "a surprise that Dr. Abrams is out there," she nonetheless expressed unfair surprise to his late designation as a testifying expert. She also stated that when she did not see Dr. Abrams designated, she assumed that Father was "concerned about his wishy-washiness as well, because he keeps changing his mind." Based on the record here, we conclude the trial court did not

abuse its discretion in finding that Father failed to establish a lack of unfair surprise.

## C. Good Cause

Father next contends that he established "he had good cause for the late disclosure" of Dr. Abrams. In that regard, Father asserts that the "tardiness of Dr. Abrams' report was evidence of good cause for [Father] to supplement him late and to allow him to testify at trial."

Besides the fact that Father failed to cite any authority for his assertion that the tardiness of Dr. Abrams' report constitutes good cause for the failure to timely amend, or supplement his discovery response, Father never made this argument in the trial court. Therefore, Father failed to preserve this complaint. *See Jacobs Eng'g Grp.*, 502 S.W.3d at 466 n.6; *Wohlfahrt*, 172 S.W.3d at 639-40; *In re C.F.M.*, 2018 WL 1704202, at \*10. Father instead told the trial court that his late designation "was a clerical error and as soon as [h]e found out about it, [h]e filed [his] motion". However, Father does not argue on appeal that his clerical error constitutes good cause for his untimely designation of Dr. Abrams. Therefore, Father's contention is waived and presents nothing for our review.

## D. Best Interest

Although unclear, it seems that Father also complains that the trial court did not take the child's best interest into account when it excluded Dr. Abrams' testimony. Father states that (1) this court recognized that "the best interest of a child may be a factor influencing a trial court's decision on procedural issues"; (2) "[i]n deciding what is in the best interest of the child, a court must be well-informed as to the surrounding circumstances"; and (3) the trial court here failed to "explain how or why it was in the child's best interest to start trial at its then

current setting as opposed to a day or week later."

We acknowledge that we have stated that the best interest of the child may be a factor influencing a trial court's decision on procedural issues. *See Van Heerden v. Van Heerden*, 321 S.W.3d 869, 878 (Tex. App.—Houston [14th Dist.] 2010, no pet.). However, a party cannot ignore the rules of civil procedure and then argue best interest of the child to try to avoid the consequences of having failed to abide by the rules. After all, the discovery rules apply to family law cases, and there are consequences if these rules are not followed. Rule 193.6 has several safeguards preventing automatic exclusion, but Father here failed to avail himself of these safeguards.

Father heavily relies on our opinion in *Van Heerden*, but that case is distinguishable. There, we stated that the mother's "disclosure responses were sufficient to satisfy" Rule 194.2 and concluded that the trial court abused its discretion in excluding all of her fact witnesses because she actually complied with the discovery rules. *Id*. at 876. Only in the context of a harm analysis determining whether the trial court's abuse of discretion probably caused the rendition of an improper judgment did we state that (1) "the best interest of the child may be a factor influencing a trial court's decision on procedural issues" and (2) "[i]n deciding what is in the best interest of the child, a court must be well-informed as to the surrounding circumstances." *Id*. at 878. In this case, the trial court has not abused its discretion by excluding Dr. Abrams' testimony under Rule 193.6, and we are not conducting a harm analysis. Further, we found harm in *Van Heerden* because the trial court's error in striking all of the mother's fact witnesses barred her from presenting any evidence at trial, other than her own testimony, thereby

stifling her ability to present the merits of her case.[6]  *Id.* at 879.

Father also complains that the trial court did not "explain how or why it was in the child's best interest to start trial at its then current setting as opposed to a day or week later."  However, there is no evidence in the record that trial would only have been postponed for a day or a week as Father seems to presume.  There is no guarantee that (1) Dr. Abrams would be immediately available for a deposition; (2) Mother's expert would be available to quickly review the deposition; (3) there would be a trial date available at any given time for a two-week trial; (4) Dr. Abrams and Dr. Silverman would be available to testify at a newly scheduled trial; (5) the parties' attorneys and the amicus attorney would be available and not already scheduled to represent other clients in already scheduled trials; and (6) all other witnesses would be available at a new trial date.  Additionally, Father overlooks that the trial court took into account the amicus attorney's assessment that postponing trial would be detrimental to Norman because he "has been in limbo for some time and . . . [Mother and Father] are doing nothing but fighting more with each other, and it's not getting better."  This assessment from a court-appointed advocate warranted the trial court's consideration.

Based on the record before us, we conclude that the trial court acted within its discretion when it excluded Dr. Abrams' testimony because Father failed to establish good cause, a lack of unfair surprise, or a lack of unfair prejudice.  We overrule the first issue.

## II.    Attorney's Fees

In his second issue, Father challenges the attorney's fees awarded to Mother asserting the $30,000 award is not supported by legally sufficient evidence.  He

---

[6] We also specifically stated that our holding was based "on the peculiar facts" that case presented.  *Id.*

claims that he may "raise an insufficiency-of-the evidence argument for the first time on appeal" pursuant to Texas Rule of Civil Procedure 324(a) and (b) and Texas Rule of Appellate Procedure 33.1(d) because "the jury's answers to the questions on attorney's fees in a SAPCR suit are merely advisory" and "the awarding of attorney's fees in SAPCRs cases is within the discretion of the trial court." Assuming without deciding that Father may raise his complaint on appeal because the attorney's fees actually were awarded by the trial court, we conclude the complaint is without merit.

## A.    Standard of Review and Applicable Law

Trial courts have broad discretion to award attorney's fees in suits affecting the parent-child relationship. *In re K.A.M.S.*, 583 S.W.3d 335, 349 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *see also* Tex. Fam. Code Ann. § 106.002(a); *Lenz v. Lenz*, 79 S.W.3d 10, 21 (Tex. 2002). However, an attorney's fees award must be supported by evidence that the fees are reasonable and necessary. *In re K.A.M.S.*, 583 S.W.3d at 349.

The Supreme Court of Texas clarified that it "intended the lodestar analysis to apply to any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 497-98 (Tex. 2019). Although contemporaneous billing records generally are not required, legally sufficient evidence to establish reasonable and necessary fees needs to include a description of the particular services performed, the identity of each attorney who and approximately when that attorney performed the services, the reasonable amount of time required to perform the services, and the reasonable hourly rate for each attorney performing the services. *See id*. at 497-98, 501-03; *In re K.A.M.S.*, 583 S.W.3d at 349. Multiplying the reasonable hourly rate by hours reasonably

18

necessary to accomplish necessary tasks yields a base lodestar figure, which constitutes a presumptively reasonable and necessary fee for prosecuting or defending the prevailing party's claim through the litigation process. *In re M.L.*, No. 14-19-00037-CV, 2021 WL 281071, at *5 (Tex. App.—Houston [14th Dist.] Jan. 28, 2021, no pet.) (mem. op.); *see also Rohrmoos Venture*, 578 S.W.3d at 498-502 and *In re K.A.M.S.*, 583 S.W.3d at 349. An amount incurred or contracted for by a claimant is not conclusive evidence of reasonableness or necessity; "[t]he fee claimant still has the burden to establish reasonableness and necessity." *Rohrmoos Venture*, 578 S.W.3d at 487-88; *In re M.L.*, 2021 WL 281071, at *5.

## B.    Application

Father argues that the testimony of Mother's attorney, S.P., constitutes legally insufficient evidence to support Mother's attorney's fees award because S.P. (1) "provided no details about the work done, how much time was spent on the tasks, and how she arrived at the total fees in [Mother]'s case;" and (2) did not "offer any contemporaneous billing records." S.P. testified as follows to establish reasonable and necessary attorney's fees:

> My name is [S.P.]. I'm an attorney. I'm licensed to practice law in the State of Texas. I've been licensed in the state of Texas since November of 1998. My practice is solely in the area of family law and child welfare law. I am in good standing with the State Bar of Texas. I am also board certified in family law and I'm also board certified in child welfare law. I am familiar with the fees charged in this area with my similar qualifications. I contracted with [Mother] at the rate of $400 per hour and I honored that throughout this case. [Mother] has been able to pay me a total of $12,000 during this case and we have more than earned that. I think just being here has been more than that time. My hourly rate, like I said, is $400 per hour. It is a fair and reasonable and necessary amount. At this point, we have reached an agreement. I am the firm owner and we entered an agreement with [Mother] that I would limit my fees to $30,000 total in this case. I will tell you that just the hours of being here in court,

we've had — and preparing for this trial, we had, in just the last two weeks, over 80 hours of my time has been spent in court and out of court, all the way there and that alone would be over $32,000. I've had paralegals in and out who have been working on the case as well as my associate attorney. However, we have agreed and have discounted all of those fees to zero.

And if this case had to go up on appeal, my firm charges $20,000 for the work to get the case briefed and to the appellate court and I believe that's a reasonable fee for appeals work. And if the case was to be taken from the appellate court all the way up to the Supreme Court, I believe that our fees would be an additional $10,000 on top of that and I believe that all of those fees are fair and reasonable and necessary for [Mother] to defend herself in this case.

Father correctly states that S.P. did not offer billing records. However, this does not mean that the trial court had insufficient evidence of the particular services performed, the identity of each attorney who and approximately when that attorney performed the services, the reasonable amount of time required to perform the services, and the reasonable hourly rate for each attorney performing the services. *See Rohrmoos Venture*, 578 S.W.3d at 497-98. S.P. testified that she has been an attorney for over 20 years, she is board certified in family and child welfare law, she is "familiar with the fees charged in this area with [her] similar qualifications," and her hourly rate of $400 is reasonable.[7] Although S.P. did not provide the specific number of hours she spent representing Mother during pretrial and trial versus trial preparation (stating she spent "in just the last two weeks, over 80 hours of [her] time" in court and in trial preparation), she presented facts tending to show that (1) within a specific period of time, she spent a specific number of hours working on this case, (2) other members of her firm worked additional hours, (3) their hours had been reduced to zero, (4) additional hours had been spent, and (5) she had entered into an agreement with Mother for a flat fee arrangement based on

---

[7] Father did not object to S.P.'s testimony that an hourly rate of $400 for a board certified attorney in family and child welfare law is reasonable.

20

these facts. Therefore, the trial court did not abuse its discretion when it concluded these agreed upon discounts for a successful trial provide evidence of reasonable and necessary attorney's fees. *See Rohrmoos Venture*, 578 S.W.3d at 497-99.

Father introduced billing records showing that his lead counsel spent two hours at the January 23, 2020 pretrial hearing on Father's motion for leave to late supplement Dr. Abrams and 75.2 hours in trial. This amounts to a total of 77.2 hours excluding any time for trial preparation.

Further, the trial court presided over the January 23, 2020 pretrial hearing as well as the entire trial from January 27, 2020, to February 7, 2020. Thus, the trial court had the opportunity to directly observe (1) the number of hours S.P. and the other attorneys spent in trial representing their clients; (2) what particular services S.P. performed, *i.e.*, representation during pretrial and trial proceedings; (3) when S.P. performed the services; (4) that S.P. was the only attorney who performed these services; and (5) the amount of time required for S.P. to successfully perform those services. Multiplying the number of hours spent in the trial court alone (as stated in Father's attorney's billing records admitted into evidence) by S.P.'s hourly rate of $400 amounts to $30,880.

While somewhat unconventional in that the evidence to establish reasonable and necessary fees in this case was not solely presented by S.P., there nonetheless was legally sufficient evidence before the trial court to support Mother's attorney's fees award. Based on the record before us, we determine there is legally sufficient evidence to support the attorney's fees awarded to Mother. We conclude the trial court did not abuse its discretion in awarding the fees, and we overrule Father's second issue.

## CONCLUSION

21

We affirm the trial court's judgment.

/s/ Meagan Hassan
   Justice

Panel consists of Justices Wise, Spain, and Hassan.